**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**Case No. 0:26-CV-61549-AHS - Civil**

GENERAL STAR INDEMNITY COMPANY,

Plaintiff,

v.

ZEIG LAW FIRM, LLC, JUSTIN E. ZEIG, EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendants.
_____________________________________/

**GENERAL STAR'S RESPONSE IN OPPOSITION TO DEFENDANT JUSTIN E. ZEIG'S RENEWED MOTION TO STAY**

Plaintiff, General Star Indemnity Company ("General Star"), respectfully submits this response in opposition to Defendant Justin E. Zeig's Renewed Motion to Stay this Declaratory-Judgment Action Pending Resolution of the Underlying California Action and for Related Injunctive Relief (the "Motion"). In support, General Star states as follows.

## I. INTRODUCTION

Count I of General Star's Complaint asks the Court to decide a single, purely legal issue: do the allegations of Experian's operative amended complaint, compared to the terms of the General Star policy, trigger a duty to defend? Under settled Florida law, the duty to defend is answered by comparing two documents

already before this Court: the underlying complaint and the policy. It is the allegations of the underlying complaint that control the duty to defend determination. Resolution of the coverage issue does not depend on the actual facts, discovery, or the outcome of the underlying case, and thus cannot pose any risk of inconsistent findings.

A stay to await resolution of facts that are legally irrelevant to General Star's coverage issue would be wholly inefficient. Worse, it would defeat the prime purpose of the Declaratory Judgment Act. General Star is funding Zeig's defense right now, under a full reservation of rights, and contends it does not owe that defense. Forcing an insurer to keep paying for a defense it disputes owing indefinitely, until the underlying case ends, is precisely the injury the Declaratory Judgment Act exists to relieve. Zeig's motion to stay should be denied.

## II. FACTS

### A. The General Star Policy.

General Star issued Lawyers Professional Liability Policy No. IJA402693 to Zeig Law Firm, LLC (the "Firm") for the period November 19, 2023, to November 19, 2024. (Dkt. 1, ¶ 8). The policy provides that General Star "shall have the right and duty to defend any **Claim** against the **Insured** seeking **Damages** to which this insurance applies even if any of the allegations of the **Claim** are groundless, false or fraudulent," but that it "shall have no duty to defend the **Insured** against any **Claim** seeking **Damages** to which this insurance does not apply." (Dkt. 1-1, p. 5, Section I - Coverage, B. Defense). The policy excludes, among other things, claims

"based upon or arising out of" any "[d]ishonest, fraudulent, criminal, knowingly wrongful, willful, malicious or intentional act" (Dkt. 1-1, p. 7, Section VI – Exclusions, B.); any "actual or alleged conversion, misappropriation or improper commingling of funds" (Dkt. 1-1, p. 8, Section VI – Exclusions, I.); any "actual or alleged violation of" the Fair Credit Reporting Act (Dkt. 1-1, p. 9, Section VI – Exclusions, R.); and "any actual or alleged gain of any personal profit or advantage to which [an] Insured is not legally entitled" (Dkt. 1-1, p. 9, Section VI – Exclusions, V).

**B. The Underlying Lawsuit.**

On June 3, 2024, Experian filed a complaint against Zeig, among others, in the United States District Court for the Central District of California under Case No. 8:24-cv-01186-FWS-JDE (Dkt. 1, ¶ 13; Dkt. 1-2) (the "Underlying Lawsuit"). On January 6, 2025, Experian filed an amended complaint, which is the operative pleading. (Dkt. 1, ¶ 14; Dkt. 1-3).

In the amended complaint, Experian alleges that Zeig participated in an "association-in-fact enterprise" with another law firm to extort Experian by settling sham FCRA lawsuits at fraudulent values; knowingly conspired to manufacture fake credit denial letters that were used as purported evidence of standing and damages and to induce Experian to make settlement payments; engaged in wire fraud and money laundering by transferring portions of the settlement payments through interstate wires from the Firm's client trust account; and personally received a share of the laundered proceeds. (Dkt. 1; ¶¶ 15-18; Dkt.

1-3, ¶ 4). Experian asserts claims against Zeig under the Racketeer Influenced and Corrupt Organizations (RICO) Act and California's Unfair Competition Law. (Dkt. 1; ¶ 19; Dkt. 1-3, ¶ 4).

**C. The Instant Lawsuit.**

General Star agreed to defend Zeig and the Firm under a full reservation of rights. (Dkt. 1, ¶ 22). On May 26, 2026, General Star filed this action seeking declarations that it owes no duty to defend (Count I) and no duty to indemnify (Count II), and that it is entitled to reimbursement of defense costs (Count III). (Dkt. 1, Counts I – III). General Star continues to fund Zeig's defense in the Underlying Lawsuit while this coverage action proceeds.

## III. ARGUMENT

**A. Legal Standard.**

A stay is not a matter of right. A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In considering if a stay is warranted, courts in this district have considered a number of factors, including whether: (1) a stay will simplify the issues in the case; (2) a stay would cause undue prejudice or tactical disadvantage to the non-moving party; and (3) discovery is complete and a trial date has been set. *DataQuill Ltd. v. Blu Prod., Inc.*, 2020 WL 6135795, at *2 (S.D. Fla. Apr. 10, 2020), citing *Baratta v. Homeland Housewares, LLC*, No. 05-60187, 2007 WL 4365596, at *2 (S.D. Fla. Dec. 13, 2007). "[A] stay should…be denied if it offers limited potential to narrow the issues in the case and the non-moving party will

suffer undue prejudice by the delay." *Conair Corp. v. Tre Milano, LLC*, No. 3:14-cv-1554, 2015 WL 4041724, at *3 (D. Conn. July 1, 2015). "The party moving for a stay bears the burden of showing why a stay is warranted," and "delay tactics by the moving party weigh against a stay." *DataQuill Ltd.*, 2020 WL 6135795, at *2. Zeig fails to meet his burden.

Zeig's invocation of the broad discretion described in *Landis v. North American Co.*, 299 U.S. 248 (1936), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), does not carry him further. The expansive discretion to stay or decline a declaratory-judgment action recognized in *Wilton* arose in the context of parallel *state* proceedings, and the Supreme Court expressly declined to "delineate the outer boundaries of that discretion" in "cases raising issues of federal law." *Id.* at 290. The Underlying Lawsuit is itself a *federal* action. A stay entered in deference to parallel federal litigation is governed by the demanding "exceptional circumstances" standard, under which "only the clearest of justifications" will excuse a federal court from exercising the jurisdiction it has. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1328–29 (11th Cir. 2004). The Underlying Lawsuit is not parallel litigation nor, even if it was, has Zeig identified "exceptional circumstances" that would justify staying this action.

**B. There Is No Reason to Delay The Duty To Defend Determination.**

**1. The Duty To Defend Turns On Facts Alleged, Not Resolved.**

Under Florida law, it is well settled that "an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly

and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005); *Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1261 (11th Cir. 2021) (explaining that the duty to defend is decided "based only on 'the eight corners of the complaint and the policy."). The comparison is a legal one, routinely resolved as a matter of law. *United States Liab. Ins. Co. v. Kelley Ventures, LLC*, 137 F. Supp. 3d 1312, 1316 (S.D. Fla. 2015).

Critically, the duty to defend does not depend on what is determined to have happened. The duty to defend must be determined from the allegations in the underlying complaint regardless of whether they are "factually incorrect or meritless," *Jones*, 908 So. 2d at 443, or "even if facts alleged are actually untrue or legal theories unsound." *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). "Indeed, when the actual facts are inconsistent with the allegations in the complaint, the allegations in the complaint control in determining the insurer's duty to defend." (internal quotations and citations omitted). *Id.*; *see also Richard Mckenzie*, 10 F.4th at 1261 ("The 'facts' we consider in evaluating the duty to defend come solely from the complaint, regardless of the actual facts of the case and regardless of any later developed and contradictory factual record."); *Trizec Props., Inc. v. Biltmore Constr. Co.*, 767 F.2d 810, 813 (11th Cir. 1985) (holding that an insurer's argument about what the evidence will ultimately show is "simply irrelevant to the task at hand," because "the 'actual facts' of the situation are not pertinent to the duty to defend issue."). Accordingly,

where the pleadings themselves show that the alleged conduct falls within a policy exclusion, the insurer has no duty to defend. *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003).

The duty to defend determination sought in Count I of General Star's Complaint will not be simplified or narrowed by halting that determination to allow the Court in the Underlying Lawsuit time to determine the validity of the allegations. Whether the allegations in the amended complaint, as pleaded, fall within the policy exclusions is a question the Court can answer now from the four corners of Experian's amended complaint and the General Star policy. The Underlying Lawsuit will develop evidence about whether those allegations are *true,* but that is a matter the duty-to-defend analysis expressly disregards.

Nor does the outcome of the Underlying Lawsuit affect the duty to defend determination in this case. In *RLI Ins. Co. v. Coastline Title of Pinellas, LLC*, 591 F. Supp. 3d 1182 (M.D. Fla. 2022), the underlying case ended while the coverage motion was pending, and the court held it made no difference: "the outcome of the underlying state claim has no effect on whether [the insurer] was required to defend." *Id*. at 1189, n.3. The insured's argument there—the same one Zeig makes here—that the insurer "cannot escape its duty to defend because the [court in the underlying litigation] has not yet determined" the merits, was rejected because "an insurer's duty to defend depends on the complaint in the underlying action, not its merits." *Id*. at 1189. A stay to await an outcome that does not affect the result is not judicial economy, it is delay for its own sake.

**2. Zeig's Concerns of Inconsistencies If Both Lawsuits Proceed Are Unfounded.**

Zeig misses this point and mistakenly argues that proceeding now risks "duplicative litigation of the same core allegations" and "inconsistent factual treatment." (Dkt. 35, pgs. 5, 8). Again, resolving the duty to defend does not require this Court to decide whether Experian's allegations are true; it requires only that the Court compare those allegations, as pleaded, to the policy provisions. As one court explained in rejecting an identical stay theory, the premise that "the Court, in resolving the…duty to defend, will make a definitive ruling as to" the underlying facts is wrong — "it is not the 'real' facts that matter when assessing the duty to defend, but the facts alleged in the complaint." *Accident Ins. Co. v. Greg Kennedy Builder, Inc.*, 159 F. Supp. 3d 1285, 1290 (S.D. Ala. 2016). There is thus no overlapping factual question for two courts to decide, and no possibility of inconsistent factual findings. The Underlying Lawsuit will not resolve whether the complaint therein makes allegations falling within the policy's coverage. *Id*.

Zeig's reliance on *Miccosukee Tribe of Indians of Florida v. South Florida Water Management District*, 559 F.3d 1191 (11th Cir. 2009), does not change the analysis. A stay to await a related federal proceeding is warranted only where that proceeding will substantially affect or control the issues to be decided. The Underlying Lawsuit will do neither, because the duty to defend is measured against the allegations of Experian's complaint, not the facts the court presiding over the Underlying Lawsuit might ultimately find.

Florida law confirms that a coverage action may proceed concurrently with the underlying suit. The Florida Supreme Court has held that the underlying action "is separate and distinct from the insurance coverage dispute," and that a trial court has the discretion to permit it to continue concurrently. *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 16 (Fla. 2004). Because the duty to defend "is determined solely by the claimant's complaint," *id.* at 10, it presents a discrete legal question the court can resolve now.

For the same reason, proceeding now with General Star's declaratory judgment action creates no risk of prejudicing Zeig's position in the Underlying Lawsuit. This Court will not adjudicate whether Zeig committed fraud, laundered money, or violated RICO. It will decide only whether Experian *alleges* conduct that the General Star policy excludes from coverage—a determination that "cannot make a definitive ruling" on Zeig's actual conduct and will not bind the California court. *Greg Kennedy Builder*, 159 F.Supp.3d at 1291. Zeig's fear of collateral consequences of proceeding is therefore unfounded.

To the extent Zeig contends that Count II seeking a determination on the duty to indemnify is premature until liability is fixed, that concern does not justify staying Count I. Courts routinely allow the ripe duty-to-defend claim to proceed while staying only the unripe indemnity claim "until the earlier of (i) a final determination of the duty-to-defend issue…or (ii) a determination…in the underlying action" of liability. *Greg Kennedy Builder*, 159 F.Supp.3d at 1293; *Mt. Hawley Ins. Co. v. Maitland Ctr., LLC*, No. 18-cv-80452, 2018 WL 3634579, at *3 (S.D.

Fla. July 30, 2018); *see also Crum & Forster Specialty Ins. Co. v. LN Apartments, LLC*, No. 6:24-CV-1416-JSS-DCI, 2025 WL 4348120, at *7 (M.D. Fla. Dec. 8, 2025) (recognizing that a court may decide the duty to defend and defer the duty to indemnify), *report and recommendation adopted,* No. 6:24-CV-1416-JSS-DCI, 2025 WL 4348107 (M.D. Fla. Dec. 29, 2025). Moreover, if there is no duty to defend, then the Court may rule there is also no duty to indemnify. *Clarendon Nat'l Ins. Co. v. Vickers*, 2006 WL 8434796, at *3 (S.D. Fla. May 25, 2006) ("It is well-settled law in Florida that where an insurer has no duty to defend, it has no duty to indemnify its insured."). The existence of an indemnity question that may await the merits is no reason to freeze the defense question that does not.

Because the actual facts are legally irrelevant to the duty to defend determination, awaiting them yields nothing but an unnecessary delay. Moreover, as discussed below, delay for its own sake would be improper as it unduly prejudices General Star.

**C. A Stay Would Cause Undue Prejudice To General Star.**

Staying this action requires General Star to keep funding a defense it contends it never owed, for as long as it takes to litigate a RICO case through trial and potential appeal. That is not the absence of prejudice Zeig claims. (Dkt. 35, p. 7) It is a concrete and continuing harm. Denying an insurer a prompt declaration "would be exposing the [insurer] to a 'very substantial and perhaps a binding obligation for providing a defense…without [its] knowing whether it owes such an obligation." *Coregis Ins. Co. v. McCollum*, 955 F. Supp. 120, 123 (M.D. Fla. 1997).

"Before [an insurer] incurs large expense in defending the state action,…[it] has a right to know whether it is bound under its contract to defend its insured." *Id*. at 124. Relieving a party of exactly this insecurity is the prime purpose of the Declaratory Judgment Act. *Nautilus Ins. Co. v. Captain Pip's Holdings, LLC*, No. 24-12440, 2025 WL 2111805, at *2 (11th Cir. July 29, 2025) (per curiam) ("[A]llowing a declaratory action by an insurer to establish nonliability under casualty insurance was one of the prime purposes of the Declaratory Judgment Act," and insurers… "reasonably expect the federal courts to resolve run-of-the-mill disputes about their duties to defend and indemnify against claims made in an underlying tort action."); *Northfield Ins. Co. v. TAFF Mgmt. Corp*., No. 0:25-CV-61558, 2026 WL 1970771 (S.D. Fla. July 6, 2026) ("allowing a declaratory action by an insurer to establish nonliability…was one of the prime purposes of the Declaratory Judgment Act," and that the insured's failure to cite authority for delay was "fatal to its opposition.").

Zeig suggests there is no urgency because General Star is already defending. (Dkt. 35, p. 7). The opposite is true. The duty to defend "is a present obligation existing during the pendency of the suit, such that a dispute concerning defense obligations presents a ripe controversy." *Greg Kennedy Builder, Inc.*, 159 F. Supp. 3d at 1289 n.4. An insurer that is defending "pursuant to a strict reservation of rights" and "retain[s] the right to withdraw the defense" presents an actual, live controversy when it seeks a declaration that it owes no duty to defend. *Id*. As

General Star is providing a defense it may not owe, the controversy is ripe, and General Star is entitled to have it decided.

Further, Zeig's proposed stay also runs headlong into the Eleventh Circuit's bar on immoderate and indefinite stays. He asks that this action be frozen until "final resolution at the district-court level" of the Underlying Lawsuit (Dkt. 35, p. 8), a multi-defendant, multi-claim case, including a RICO claim, whose end point cannot be predicted. The Eleventh Circuit will not uphold a stay of that character because it places the opposing party in "an indefinite period" of suspended proceedings. *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982). District courts in this Circuit treat "indeterminate delay [as] harmful on its face." *Fid. Land Tr. Co., LLC v. Sec. Nat. Mortg. Co.*, 905 F. Supp. 2d 1276, 1278 n.1 (M.D. Fla. 2012). Zeig himself acknowledges a stay "should not be indefinite or immoderate" (Dkt. 35, p. 7), yet the relief he seeks is exactly that.

Zeig's suggestion that General Star's harm is cured by its reimbursement claim (Dkt. 35, p. 7) gets it backwards. That an insurer may later sue to recoup wrongly paid defense costs does not make it whole for being forced to advance those costs in the interim; it merely underscores that General Star should not be paying them at all if it owes no defense. The reimbursement remedy is no substitute for the prompt coverage determination the Declaratory Judgment Act guarantees.

### D. The Stage Of Litigation On Its Own Does Not Warrant A Stay.

The third factor—whether discovery is complete and a trial date has been set—is, on its own, no basis to warrant a stay in this matter. If this factor alone was dispositive, then any matter could be stayed regardless if the stay offers limited potential to narrow the issues in the case and the non-moving party would suffer undue prejudice by the delay. That is not the standard.

While the Court has authority to stay or abate an action in an appropriate case, there is no showing that this is such a case. As discussed above, the party moving for a stay bears the burden of showing why a stay is warranted. *DataQuill Ltd.*, 2020 WL 6135795, at *2. Zeig has plainly failed to meet that burden with respect to the other two factors and should not be granted a stay simply because he sought it early in the litigation and for no other reason. Courts in this circuit have denied stays in cases in their infancy where the movant relied on generalities about concerns like duplicative discovery. *See Thomas v. Merck & Co.*, No. 22-80445-CV, 2022 WL 4281336 at *1 (S.D. Fla. July 20, 2022) (denying a stay at the pleading stage where the court found the moving party's claims that there would be duplicative discovery and a risk of inconsistent rulings was unfounded); *Amalong v. Wyeth LLC*, No. 610CV1650ORL22GJK, 2011 WL 13299580 at *2 (M.D. Fla. Apr. 26, 2011) (denying a stay, in part, because the court's determinations in one forum had little to no bearing on the issues before the court in the present case). Because this factor is clearly outweighed by the other two factors, the Court should exercise its discretion and deny the stay.

### E. Zeig Is Not Entitled To The Injunctive Relief He Requests.

Zeig also asks the Court to enjoin General Star, during the stay, from "terminating or materially reducing" the defense funding it is providing to him. (Dkt. 35, p. 8.) That request is wholly derivative of the stay; by its own terms it seeks only such "ancillary injunctive relief as is necessary to preserve the status quo during the stay." (Dkt. 35, p. 1.) Because Zeig is not entitled to a stay, there is no stay-based status quo to preserve, and the request for injunctive relief fails with it. Zeig offers no independent justification for compelling General Star to keep funding a defense it contends it never owed, and the Court should not grant, through an injunction, the very relief the merits of this action will decide.

## CONCLUSION

The duty to defend is determined solely by the allegations against the insured, not by the actual facts. A stay to await resolution of those allegations would generate no efficiency, eliminate no risk of inconsistent findings, and prejudice no legitimate interest of Zeig's, while forcing General Star to keep funding a defense it disputes owing for an indefinite period — the very injury declaratory relief is designed to prevent. General Star respectfully requests that the Court deny the Renewed Motion to Stay and the related request for injunctive relief and permit this action to proceed.

Dated: September 23, 2026.

Respectfully submitted,

/s/ Ashley N. Flynn
Christopher A. Wadley* (IL Bar # 6278651)
Philip G. Brandt* (IL Bar # 6295960)

Ashley N. Flynn (FL Bar # 124995)
Walker Wilcox Matousek LLP
One N. Franklin St. Ste. 3200
Chicago, IL 60606
Telephone: (312) 244-6700
Facsimile: (312) 244-6800
Email: cwadley@walkerwilcox.com
pbrandt@walkerwilcox.com
aflynn@walkerwilcox.com

*Admitted *pro hac vice*

Attorneys for General Star Indemnity Company

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2026, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF filing system.

/s/ Ashley N. Flynn